UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JOHNNY PAGAN,

               Plaintiff,                    12 Civ. 9047 (WHP)

    -against-                             **AMENDED COMPLAINT**

MORRISANIA NEIGHBORHOOD FAMILY
HEALTH CENTER,                             PLAINTIFF DEMANDS A
                                                             TRIAL BY JURY
               Defendant.
---------------------------------------------------------------x

        Plaintiff, Johnny Pagan, by his attorneys, Liddle & Robinson, L.L.P., alleges for his Amended Complaint as follows:

**PARTIES**

        1.      Mr. Pagan is a natural person residing at 70 West 95th Street, Apartment 21J, New York, New York 10025.

        2.      Upon information and belief, defendant, Morrisania Neighborhood Family Health Center ("Morrisania") is a New York City Health and Hospitals Corporation with its place of business located at 1225 Gerard Avenue, Bronx, New York 10452.

**JURISDICTION AND VENUE**

        3.      Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S. C. § 1367.

4. Mr. Pagan filed a charge of discrimination with the Equal Employment Opportunity Commission on or about February 19, 2010 and received a Notice of Right to Sue on or about October 24, 2012.

5. Mr. Pagan served copies of this Amended Complaint upon the New York City Commission on Human Rights and Corporation Counsel prior to filing it in the United States District Court.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to plaintiff's claims occurred within the Southern District of New York.

## FACTS

7. Mr. Pagan is a Hispanic male born on June 10, 1941.

8. Mr. Pagan was employed by Morrisania from July 1998 through October 2003 as a Coordinating Manager. He retired from Morrisania in October 2003 following an August 2002 diagnosis of prostate cancer. He was subsequently hospitalized for his cancer, as well as for heart disease, high blood pressure, diabetes, and other ailments. Prior to joining Morrisania, Mr. Pagan received a coronary stent implant.

9. Mr. Pagan was rehired to Morrisania by Jose Sanchez, then Senior Vice President of the Generations+/Northern Manhattan Health Network, which includes Morrisania.

He returned to work in April 2007 as the Assistant Director of the Administration Outreach Department. His responsibilities included visiting community organizations, churches, businesses and other groups to provide information concerning the services and activities provided by Morrisania. He also conducted needs assessments, organized community activities, and prepared monthly reports.

10. Throughout the course of his employment with Morrisania, Mr. Pagan was qualified for his position and performed his duties in a professional and competent manner.

11. When Mr. Pagan rejoined Morrisania, the position of Director of Administration Outreach was vacant. Mr. Pagan thus reported to Nancy Hernandez, the Associate Executive Director of Morrisania.

12. Upon rejoining Morrisania, Mr. Pagan organized multiple community outreach programs. For example, in March and July 2007, Mr. Pagan organized breast cancer and prostate cancer screening campaigns.

13. In October 2007, Mr. Pagan participated in the Take Care New York Campaign as an outreach supervisor. The outreach effort was exceptionally successful and Mr. Pagan received written praise from Ms. Hernandez for his efforts.

14. In November 2007, Mr. Pagan participated in a Flu Shot Vaccine Campaign as an outreach supervisor. Mr. Pagan received personal congratulations from Morrisania's Director of Medical Affairs and Chief of Staff.

15. During Mr. Pagan's employment with Morrisania he received countless letters from community leaders and officials, as well as board members at Morrisania, expressing congratulations, appreciation and praise for his work.

16. In November 2007, Ms. Hernandez rated Mr. Pagan's performance as "fully competent" for the period April 30, 2007 through October 30, 2007.

17. In or around February 2008, Mr. Pagan's responsibilities were changed to include telephone outreach for the purpose of reducing Morrisania's patient no-show rates.

18. In or around April 2008, Mr. Pagan took a medical leave of absence to undergo wrist surgery. When he returned in August 2008, he found that his office had been reassigned to someone else with no explanation.

19. On May 4, 2009, Ms. Hernandez prepared four performance reviews for Mr. Pagan, one for the period October 30, 2007 through April 30, 2008, another for the period July 1, 2008 through September 30, 2008, a third for the period September 30, 2008 through December 31, 2008, and the last for the period December 31, 2008 through March 31, 2009.

20. In the review prepared for the period October 30, 2007 through April 30, 2008, Ms. Hernandez rated Mr. Pagan as "fully competent." Ms. Hernandez noted in the review that the rating should instead be "needs improvement," but that it would remain "fully competent" because Mr. Pagan had not been timely evaluated. She provided no explanation for preparing the review one year late.

21. In the review prepared for the period July 1, 2008 through September 30, 2008, Ms. Hernandez assigned Mr. Pagan an overall rating of "needs improvement," despite assigning him more than half a dozen "superior" sub-ratings. Again, no explanation was provided for the late preparation of the review.

22. In the reviews prepared for the periods September 30, 2008 through December 31, 2008 and December 31, 2008 through March 31, 2009, Ms. Hernandez also assigned Mr. Pagan an overall rating of "needs improvement."

23. A few days after the four performance reviews were prepared, on May 7, 2009, Mr. Pagan's responsibilities were again changed, and he was assigned to oversee the Dental, Podiatry and Laboratory Clinics. In informing him of the change, Ms. Hernandez said she had "bad news."

24. In his new role, Mr. Pagan reported to Nancy Gonzalez, Senior Associate Director of Morrisania. Ms. Gonzalez, in turn, reported to Ms. Hernandez.

25. Mr. Pagan was not provided with necessary training in the Webterm, Unity and Dentrix systems used in the Clinics, despite his requests.

26. Starting in May 2009 and continuing until Mr. Pagan's termination three months later, Ms. Gonzalez made discriminatory remarks to Mr. Pagan on a regular basis, asking him why he did not retire, particularly given his illness. She also said to him "You are sick, do not get sick in this moment."

27. In July 2009, Ms. Gonzalez prepared a performance review for Mr. Pagan for the period July 1, 2009 through June 30, 2010, in which she assigned him a rating of "needs improvement."

28. On or about August 11, 2009, Ms. Hernandez prepared a written document requesting permission to terminate Mr. Pagan's employment. She based her request on the assertion that Mr. Pagan had received a "needs improvement" rating on five performance reviews. In fact, four of those performance reviews had been prepared only three months earlier (well after the relevant review periods), one of them rated Mr. Pagan as "fully competent," and the most recent review addressed Mr. Pagan's three months of work in the Clinics during which time he had received no training.

29. By letter dated August 12, 2009, Mr. Pagan was informed that his employment would be terminated effective August 26, 2009.

## FIRST CLAIM
(Discrimination Under the ADEA)

30. Mr. Pagan repeats and realleges the allegations contained in paragraphs 1 through 29 above as if separately set forth herein.

31. At all relevant times, Mr. Pagan was an "employee" under the ADEA.

32. Morrisania is an "employer" under the ADEA

33. Morrisania discriminated against Mr. Pagan on the basis of his age in violation of the ADEA by, among other things, terminating his employment.

34. By reason of the foregoing, Mr. Pagan suffered damages, including emotional pain and mental anguish, in an amount as yet undetermined.

35. Upon information and belief, Morrisania's discriminatory conduct was taken with reckless indifference to Mr. Pagan's rights, entitling him to liquidated damages under the ADEA.

## SECOND CLAIM
(Discrimination Under the ADA)

36. Mr. Pagan repeats and realleges the allegations contained in paragraphs 1 through 35 above as if separately set forth herein.

37. At all relevant times, Mr. Pagan was an "employee" under the ADA.

38. Morrisania is an "employer" under the ADA

39. Morrisania discriminated against Mr. Pagan on the basis of his disability in violation of the ADA by, among other things, terminating his employment.

40. By reason of the foregoing, Mr. Pagan suffered damages, including emotional pain and mental anguish, in an amount as yet undetermined.

41. Upon information and belief, Morrisania's discriminatory conduct was taken with reckless indifference to Mr. Pagan's rights, entitling him to punitive damages under the ADA.

### THIRD CLAIM
(Discrimination Under the New York State
Human Rights Law)

42. Mr. Pagan repeats and realleges the allegations contained in paragraphs 1 through 41 as if separately set forth herein.

43. At all relevant times, Mr. Pagan was an "employee" for purposes of § 296 of the New York State Human Rights Law.

44. Morrisania is an "employer" for purposes of § 296 of the New York State Human Rights Law.

45. Morrisania discriminated against Mr. Pagan on the basis of his age and/or disability in violation of the New York State Human Rights Law by, among other things, terminating his employment.

46. By reason of the foregoing, Mr. Pagan suffered damages, including emotional pain and mental anguish, in an amount as yet undetermined.

**FOURTH CLAIM**
(Discrimination Under the New York City
Human Rights Law)

47. Mr. Pagan repeats and realleges the allegations contained in paragraphs 1 through 46 as if separately set forth herein.

48. Mr. Pagan is a "person" under § 8-102(1) of the New York City Human Rights Law.

49. Morrisania is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

50. Morrisania discriminated against Mr. Pagan on the basis of his age and/or disability in violation of the New York City Human Rights Law by, among other things, terminating his employment.

51.  By reason of the foregoing, Mr. Pagan suffered damages, including emotional pain and mental anguish, in an amount as yet undetermined.

52.  Upon information and belief, Morrisania's discriminatory conduct was taken with reckless indifference to Mr. Pagan's rights, entitling him to punitive damages under the New York City Human Rights Law.

WHEREFORE, Mr. Pagan demands judgment against Morrisania as follows:

A.  On his First Claim, back pay and front pay in lieu of reinstatement, in amounts as yet undetermined, compensatory damages and punitive damages to the maximum extent allowable by law, attorneys' fees, interest and costs;

B.  On his Second Claim, back pay and front pay in lieu of reinstatement, in amounts as yet undetermined, compensatory damages and punitive damages to the maximum extent allowable by law, attorneys' fees, interest and costs;

C.  On his Third Claim, back pay and front pay in lieu of reinstatement, in amounts as yet undetermined, compensatory damages, interest and costs;

D.  On his Third Claim, back pay and front pay in lieu of reinstatement, in amounts as yet undetermined, compensatory damages and punitive damages to the maximum extent allowable by law, attorneys' fees, interest and costs; and

E.  Such other and further relief as the Court deems appropriate under the circumstances.

Dated: New York, New York
      June 7, 2013

LIDDLE & ROBINSON, L.L.P.

By: *(signature)*
Christine A. Palmieri
Attorneys for Plaintiff
800 Third Avenue
New York, New York 10022
(212) 687-8500